**DICKINSON WRIGHT PLLC**
JOHN L. KRIEGER, ESQ.
Nevada Bar No. 6023
JENNIFER K. CRAFT
Nevada Bar No. 8038
BRADY A. BATHKE, ESQ.
Nevada Bar No. 16191
3883 Howard Hughes Pkwy., Suite 800
Las Vegas, Nevada 89169
Tel: (702) 550-4439
Fax: (844) 670-6009
Email: jkrieger@dickinsonwright.com
Email: jcraft@dickinsonwright.com
Email: bbathke@dickinsonwright.com

*Attorneys for Plaintiff*
*CN Investors LLC*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| CN INVESTORS LLC, a Nevada limited liability company, | CASE NO.: |
| *Plaintiff*, | **COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| CN INVESTORS LLC, an unknown business entity, | |
| *Defendant*. | |

Plaintiff CN Investors LLC ("CN"), hereby states its complaint as follows:

**NATURE OF CASE**

1. This is an action for fraudulent representations under NRS 598.0915, *et seq.*; false designation of origin and unfair competition in violation of the Lanham Act, 15 U.S.C. § 1051, *et seq.*; common law trademark infringement and unfair competition; violation of the Nevada Deceptive Trade Practices Act; and cybersquatting against the <cninvestorsllc.com> and <cninvestorllc.com> domain names (the "Infringing Domain Names") based on the Anti-cybersquatting Consumer Protection Act ("ACPA").

1

2. Defendant has cloaked its identity and is using CN's name and corporate identity to impersonate CN so as to divert unsuspecting consumers to an unaffiliated fraudulent website linked to the Infringing Domain Names that is intentionally designed to confuse consumers and potentially expose consumers to phishing scams and/or identity theft. CN seeks injunctive relief and the transfer of the Infringing Domain Names.

## THE PARTIES

3. CN is a Nevada limited liability company with its principal place of business at 10845 Griffith Peak Dr., Suite 520, Las Vegas, NV, 89135.

4. Defendant is an unknown business entity that claims to have offices in Las Vegas, Nevada at CN's previous physical office address and in Manama, Bahrain.

## JURISDICTION AND VENUE

5. CN's claims are for fraudulent representations under NRS 598.0915, *et seq.*; false designation of origin and unfair competition under the Lanham Act 15 U.S.C. § 1125, *et seq.*; trademark infringement and unfair competition under Nevada common law; unfair and deceptive acts under the Nevada Deceptive Trade Practices Act, NRS 598.0915, *et seq.*; and cybersquatting under 15 U.S.C. § 1125(d).

6. The Court has original subject matter jurisdiction over the federal law claims pursuant to 28 U.S.C. §§ 1331 and 1338. This case primarily involves a federal question. This Court also has supplemental jurisdiction over the state law claims in this matter pursuant to 28 U.S.C. § 1367(a).

7. The Court may exercise personal jurisdiction over Defendant because it purposefully directs its activities toward the State of Nevada and, thus, purposefully avails itself of the privileges of conducting business in the State of Nevada, and has directly harmed CN in this judicial district by impersonating CN and using CN's name and corporate identity so as to divert unsuspecting consumers to an unaffiliated fraudulent website linked to the Infringing Domain Names that is intentionally designed to confuse consumers and potentially expose consumers to phishing scams and/or identity theft, which Defendant knew or should have known

would cause injury to CN in Nevada.

8. More specifically, Defendant conducts business activities in the State of Nevada through its interactive e-commerce websites located at <cninvestorsllc.com> and <cninvestorllc.com>, which are accessible to consumers in this judicial district.

9. The Infringing Domain Names are interactive websites that are designed to promote Defendant's services and collect personal information from would-be purchasers.

10. Upon information and belief, Defendant imposes no geographical restrictions on who may access the Infringing Domain Names.

11. Upon information and belief, Defendant advertises, offer for sales, and sells services to consumers in Nevada.

12. Defendant committed tortious acts that it knew or should have known would cause injury to CN in Nevada.

13. Venue is proper under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to CN's claims occurred in this judicial district, and thus, confusion about the origin of Defendant's services is likely to occur in this district. Pursuant to LR IA 1-6, venue lies in the unofficial Southern Division of this judicial district.

## GENERAL ALLEGATIONS

### *Background on CN*

14. CN has been a leader in the business and restaurant management services market since 2010.

15. Specifically, CN owns Chateau Nightclub LLC and manages world-famous restaurants Chéri Rooftop and Beer Park on the Las Vegas Strip in Las Vegas, Nevada (the "CN Restaurants").

16. CN has a loyal and dedicated following among the business and restaurant management services market.

/ / /

/ / /

***CN's Business and Trademark Rights***

17. The CN Restaurants have been extensively featured in the media nationwide since their inception.

18. The CN Restaurants are located atop the Paris Las Vegas Hotel & Casino, and are known for their views of the Las Vegas Strip and elevated food and drink selections.

19. CN is the record owner of a Nevada trademark registration for CN INVESTORS LLC (NV Reg. No. 202500050798-5) issued on February 27, 2025, in Class 101 for "[b]usiness management; business information; restaurant management" (the "CN Mark"). A true and accurate copy of the registration certificate for the CN Mark is attached here as Exhibit 1.

20. CN has continuously used the CN Mark in connection with business management, business information, and restaurant management since at least February 22, 2010, in the United States (the "CN Services"). The CN Mark is well established in the business and restaurant management market.

21. CN has spent substantial amounts of money to advertise and promote the CN Mark in print, broadcast media, point-of-sale materials, and on the Internet throughout the United States and around the world.

22. Based on its Nevada trademark registration and extensive use, CN owns the exclusive right to use the CN Mark in connection with business management, business information, and restaurant management.

23. CN's promotion and sale of the CN Services using the CN Mark have made the mark valuable as an identifier of the CN Services that serve to distinguish the CN Services from competing services.

24. Customers in this judicial district and elsewhere readily recognize the CN Mark as a distinctive designation of the origin of the CN Services.

25. The CN Mark has significant goodwill in the marketplace and is uniquely associated with CN and its business, as well as the quality and nature of the CN Services.

/ / /

*Defendant's Fraudulent and Infringing Activities*

26.    Defendant is impersonating CN, but fraudulently markets itself as a fake financial investment company throughout the United States (the "Infringing Services") using the name "CN Investors LLC" (the "Infringing Mark") as a corporate name, trademark, and by way of the Infringing Domain Names.



27.    A true and accurate copy of a print out of the <cninvestorsllc.com> web page is attached here as Exhibit 2. <cninvestorsllc.com> is an Internet domain name registered on May 8, 2024, through domain name registrar NameSilo, LLC ("NameSilo"), utilizing a privacy service. A true and accurate copy of the WHOIS registration record for the <cninvestorsllc.com> domain name is attached hereto as Exhibit 3.

28.    <cninvestorllc.com> is an Internet domain name registered on October 29, 2021, through domain name registrar NameCheap, Inc. ("NameCheap"), utilizing a privacy service. A true and accurate copy of the WHOIS registration record for the <cninvestorllc.com> domain name is attached hereto as Exhibit 4.

/ / /

/ / /

/ / /

29. On the "About Us" page, Defendant purports to be an investment and financial services company that operates throughout Europe, America, Asia, North Africa, and other emerging markets, and claims it has invested over 48 billion USD. A true and accurate copy of a print out of the "About Us" page is attached here as Exhibit 5.

**About CN Investors LLC**

CN Investors LLC was established in Bahrain in 2001, and has invested over USD 48 billion in the different key investment areas. CN Investors LLC is engaged in investments activities and financial services primarily in Europe, America, Asia, North Africa and other emerging markets. We offer a full spectrum of innovative and unrivalled investment and financial services which include both advisory and asset management.

Our strength rests on diversified portfolio of Direct Capital Market Investments, Real Estate and Alternative Investments.

CN Investors LLC has a long track record of identifying and delivering investment opportunities for its clients and shareholders, and has been awarded for its outstanding innovations in Islamic Finance.

Cementing its position as a pioneering investment house, CN Investors LLC has conceptualized and established some of the regions leading financial institutions.

CN Investors LLC provides its clients with carefully selected investment opportunities that are characterized by achieving the balance between risks and profits, and does its best for the development of its clients' investment through feasible projects that have economic value. It implements and adopts the highest level of ethical standards, internal controls and corporate governance practices. Our focus is on maximizing each business opportunity which is presented to us, and creating mutually beneficial partnerships with like-minded companies and entrepreneurs, both in Europe and around the world. We work with our partners to create long-term business relationships, utilizing our expertise, professionalism and our diverse network. We are dedicated to delivering only premium quality and comprehensive financial services. This is one of the highest priorities of our company

30. Moreover, Defendant purports to invest in a wide range of industries on its "Industries" page, including oil and gas field services, defense and security, agriculture, power generation, sustainability, financial services, retail, real estate development, and health care. A true and accurate copy of a print out of the "Industries" page is attached here as Exhibit 6.

31. Further, Defendant attempts to add legitimacy on its "Contact Us" page by listing a Las Vegas, Nevada address that actually belongs to CN's previous address, and CN's actual Nevada Business ID (NV20101134583) and Entity Number (E0077472010-2) assigned by the Nevada Secretary of State:

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /


> **Please Make a Call For more Enquiries**
>
> **Meet Us In Our Offices:**
>
> **Admin Office Address (BAHRAIN):**
> CN Investors LLC
> #Office 600, Level
> Block 653
> Al Khalifa Ave, Manama, Bahrain
>
> **Address (USA):**
> CN Investors LLC
> #10100 W. CHARLESTON BLVD SUITE 110, LAS VEGAS, NV 89135
>
> **Company Registration Number: E0077472010-2**
>
> **Business Number: NV20101134583**

A true and accurate copy of a print out of the "Contact Us" page is attached here as Exhibit 7.

32. Upon information and belief, Defendant included this information on its websites to trade off CN's goodwill and intentionally cause consumers to believe both sites are operated and approved by CN, when they are not.

33. Given Defendant's blatant unauthorized use of the CN Mark, CN's previous physical address, and CN's Nevada Secretary of State Entity ID and Nevada Business ID, there is no question Defendant is attempting to create an association between the Infringing Domain Names, the associated websites, and CN.

34. More importantly, CN is aware of multiple consumers who were deceived by Defendant into believing it was CN with whom the consumers were interacting.

35. On December 23, 2024, Defendant contacted a third party consumer (the "First Deceived Consumer") using its website contact form alleging it wanted to invest money in the First Deceived Consumer.

36. On January 9, 2025, Defendant and the First Deceived Consumer had a virtual

meeting where Defendant and the First Deceived Consumer discussed the potential investment.

37. On January 14, 2025, Defendant stated it wished to invest $5,000,000 with the First Deceived Consumer with the requirement of executing the final contract face-to-face in Dubai, UAE.

38. Defendant required the First Deceived Consumer to provide a copy of his/her driver's license.

39. On January 17, 2025, for due diligence purposes, the First Deceived Consumer visited the Las Vegas, Nevada address in Defendant's email signature, which is CN's previous address.

40. The First Deceived Consumer realized Defendant was a fraudulent entity and contacted CN to alert it of Defendant's fraudulent and infringing activity.

41. Further, on or around February 22, 2025, Defendant contacted a different third party consumer (the "Second Deceived Consumer") using its website contact form alleging it wanted to invest money in the Second Deceived Consumer.

42. Defendant and the Second Deceived Consumer exchanged several emails regarding Defendant's purported interest in investing in the Second Deceived Consumer.

43. Defendant's email signature included CN's previous address, and CN's Nevada Secretary of State Entity ID and Nevada Business ID.

44. While doing its due diligence into Defendant, the Second Deceived Consumer realized Defendant was impersonating CN.

45. On March 12, 2025, the Second Deceived Consumer contacted CN to alert it of Defendant's fraudulent and infringing activity

46. Defendant's use of the Infringing Mark is identical and/or confusingly similar to the CN Mark in sight, sound, and meaning.

47. CN developed enforceable rights in the CN Mark prior to when Defendant began use of the Infringing Mark in the United States.

48. Upon information and belief, Defendant knew of the CN Services when Defendant

adopted and began using the Infringing Mark.

49. CN has not expressly or impliedly authorized, permitted, or given consent to Defendant to use the Infringing Mark on any services.

50. Defendant displays, promotes, and makes available for sale services using the Infringing Mark in the same manner that CN displays, promotes, and makes available for sale its CN Services using the CN Mark.

51. Upon information and belief, Defendant is using, and has used, the Infringing Mark intentionally to trade upon the goodwill and substantial recognition associated with the CN Services offered under the CN Mark.

52. Upon information and belief, Defendant uses the Infringing Mark to associate its fraudulent investment services with the CN Services or otherwise trade upon CN's reputation.

53. Upon information and belief, the use of the Infringing Mark by Defendant causes, or is reasonably likely to cause, consumer confusion, mistake, or deception regarding the origin, association or sponsorship of Defendant's fraudulent services.

54. Upon information and belief, the use of the Infringing Mark by Defendant causes, or is reasonably likely to cause, consumers and potential customers to believe erroneously that Defendant's fraudulent services are put out by and/or sponsored or associated with services originating from CN when, in fact, Defendant's fraudulent services are not.

55. Further enhancing the likelihood of confusion, Defendant markets its fraudulent services to the same consumers as CN, namely, business owners.

56. The acts of Defendant outlined herein cause, have caused, and/or are reasonably likely to cause, CN to suffer irreparable injury to its business and substantial loss of goodwill and reputation unless and until a court order enjoins Defendant from continuing to commit the wrongful actions outlined herein.

57. CN has no adequate remedy at law.

/ / /

/ / /

## COUNT I
### Violation of the Nevada Deceptive Trade Practices Act
### (NRS 598.0915, *et seq.*)

58. CN re-alleges and incorporates by reference all allegations contained in this Complaint as though fully set forth herein.

59. Defendant knowingly made, and continues to make, a false representation as to the source, sponsorship, approval or certification of its fraudulent investment services.

60. Defendant knowingly made, and continues to make, a false representation as to affiliation, connection, association with or certification by CN by offering its fraudulent investment services under the Infringing Mark.

61. Defendant knowingly made, and continues to make, a false representation as to the characteristics and uses of its fraudulent investment services.

62. Defendant knowingly made, and continues to make, a false representation as to the sponsorship, approval, status, affiliation or connection of its fraudulent investment services.

63. Defendant's use of the Infringing Mark constitutes deceptive trade practices under the Nevada Deceptive Trade Practice Act, NRS 598.0915(2-3, 5), because Defendant knowingly made, and continues to make, a false representation regarding the source of its fraudulent investment services.

## COUNT II
### False Designation of Origin and Unfair Competition
### (Lanham Act § 43(a), 15 U.S.C. § 1125(a)(1)(A))

64. CN re-alleges and incorporates by reference all allegations contained in this Complaint as though fully set forth herein.

65. This is an action for false designation of origin arising under 15 U.S.C. § 1125(a).

66. Defendant's use of the Infringing Mark in connection with its fraudulent investment services constitutes a false designation of origin that has caused, or is likely to cause, confusion, mistake, and deception as to the affiliation, connection, or association between the CN Services and the services offered in connection with the Infringing Mark, all in violation of 15

U.S.C. § 1125(a)(1)(A).

67. Upon information and belief, Defendant has infringed on CN's trademark rights to the CN Mark in order to: offer its fraudulent investment services; trade on the reputation and goodwill of CN Services by causing consumer confusion and mistake; and deceive the public into believing that the services offered in connection with the Infringing Mark are associated with CN Services or sponsored by, or approved by CN, when they are not.

68. Upon information and belief, Defendant had actual knowledge of CN's ownership and prior use of the CN Mark and without CN's consent, have willfully violated 15 U.S.C. § 1125(a).

69. On information and belief, Defendant's use of the Infringing Mark to identify the fraudulent investment services injures CN's commercial interest in its reputation.

70. The economic and reputational injury to CN of the infringement flow directly from the confusion and/or deception wrought by Defendant's infringement of CN's trademark rights.

71. The economic and reputational injuries occur due to the similarity of the Infringing Mark to the CN Mark used for the CN Services.

72. Defendant's use of the Infringing Mark creates the false impression that Defendant's fraudulent investment services originate from the same source as the CN Services.

73. The false impression created by Defendant's use of the Infringing Mark has and/or will, upon information and belief, lead consumers to purchase Defendant's fraudulent investment services on the erroneous belief that Defendant's services originate from the same source as the CN Services.

74. As a direct and proximate result of the foregoing acts by Defendant, CN has suffered, and continues to suffer, substantial damages not yet determinable, including irreparable injury for which there is no adequate remedy at law. Such irreparable injury will continue unless and until Defendant is preliminarily and permanently enjoined by this Court from further violation of CN's rights, for which CN has no adequate remedy at law.

75. Pursuant to 15 U.S.C. § 1116, Defendant should be preliminarily and, upon final

hearing permanently, enjoined from using the Infringing Mark, or variants thereof, or otherwise unfairly competing against CN or infringing on CN's trademark rights in the CN Mark.

76. Pursuant to 15 U.S.C. § 1117, CN is entitled to recover from Defendant:

   a. Defendant's profits from selling the services bearing the Infringing Mark, or any variants thereof;

   b. CN's actual damages, including, but not limited to, CN's added advertising costs necessitated by Defendant's sale of its fraudulent services, or any variants thereof;

   c. Exceptional damages for intentional infringement, bad faith, and willful conduct, equal to three times profits or damages, whichever is greater; and

   d. The costs of this action;

77. Furthermore, CN seeks an order from this Court under 15 U.S.C. § 1118 compelling Defendant to destroy all materials bearing the Infringing Mark or any variants thereof.

## COUNT III
**Nevada State and Common Law Trademark Infringement and Unfair Competition**

78. CN re-alleges and incorporates by reference all allegations contained in this Complaint, as though fully set forth herein.

79. This cause of action for trademark infringement and unfair competition arises under both state and common law of the State of Nevada.

80. CN has a protectable interest in the distinctive CN INVESTORS LLC name as detailed above.

81. CN's CN Mark is registered in the State of Nevada.

82. Defendant has deliberately and willfully attempted to trade on CN's goodwill in its CN Mark, and the reputation CN has established in connection with business and restaurant management services.

83. Defendant has also deliberately and willfully attempted to confuse consumers as to the origin and sponsorship of the services bearing the Infringing Mark and to pass them off as those of services offered by CN and identified by its CN Mark.

84. Defendant's unauthorized and tortious conduct has also deprived and will continue to deprive CN of the ability to control the consumer perception of its services offered under the CN Mark, placing the valuable reputation and goodwill of CN in the hands of Defendant without permission or approval of CN.

85. By its actions, Defendant has infringed CN's CN Mark, deliberately and with the intention of wrongfully trading on the goodwill and reputation symbolized by CN's CN Mark.

86. Defendant's conduct is likely to cause appreciable confusion, mistake, or deception as to the affiliation, connection or association of Defendant's fraudulent services with the CN Services offered by CN, and as to the origin, sponsorship, or approval of Defendant's fraudulent services bearing the Infringing Mark with the CN Services offered by CN, all in violation of Nevada common law.

87. On information and belief, Defendant's use of the Infringing Mark on Defendant's fraudulent services injures CN's commercial interest in its reputation.

88. As a result of Defendant's conduct, CN has suffered substantial damages, as well as the continuing loss of the goodwill and reputation established by CN in its CN Mark.

89. The economic and reputational injuries occur due to the similarity of the Infringing Mark to the CN Mark used for the CN Services.

90. Defendant's use of the Infringing Mark, or variants thereof, creates the false impression that Defendant's fraudulent services originate from the same source as the CN Services.

91. The false impression created by Defendant's use of the Infringing Mark, or variants thereof, has and/or will, upon information and belief, lead consumers to purchase Defendant's fraudulent services on the erroneous belief that Defendant's services originate from CN.

92. Thus, CN is entitled to recover an amount equivalent to the amount of profits that Defendant has derived and may continue to derive as a result of its unlawful misappropriation and infringement of CN's CN Mark.

93. Defendant's conduct as described above has been willful, deliberate, malicious, and with intent to injure CN. Therefore, CN is also entitled to recover exemplary damages from Defendant in an amount sufficient to punish Defendant and to deter it and others from engaging in similar wrongful conduct in the future.

94. Defendant should also be preliminarily, and upon final hearing, permanently, enjoined from using the Infringing Mark or variants thereof.

## COUNT IV
### Violation of the Nevada Deceptive Trade Practices Act
### (NRS 598.0915, *et seq.*)

95. CN re-alleges and incorporates by reference all allegations contained in this Complaint as though fully set forth herein.

96. CN owns, has the exclusive right to use and actively uses the CN Mark in Nevada.

97. As alleged herein, Defendant has without consent or authorization from CN, used and continue to use advertising that is confusingly similar to the CN Mark in interstate commerce, to sell and offer to sell the fraudulent services in connection with the Infringing Mark.

98. The similarity between Defendant's use of the Infringing Mark is so great as to be likely to cause confusion, mistake, or deception as to the source or origin of Defendant's fraudulent services in that the public and others are likely to believe that Defendant's services are promoted by, sponsored by, approved by, licensed by, affiliated with, or in some other way connected with CN Services offered by CN.

99. Defendant's unauthorized use of the Infringing Mark on advertising is confusingly similar to CN's distinct CN Mark.

100. On information and belief, Defendant's use of the Infringing Mark injures CN's commercial interest in its reputation.

101. The economic and reputational injuries to CN flow directly from the confusion and/or deception wrought by Defendant's infringement of CN's trademark rights.

102. The economic and reputational injuries occur due to the similarity of the Infringing

Mark to the CN Mark.

103. Defendant's use of the Infringing Mark constitutes deceptive trade practices under the Nevada Deceptive Trade Practice Act, NRS 598.0915(1), because Defendant is knowingly and intentionally using the Infringing Mark to trade on CN's hard-earned goodwill in the CN Mark, as well as to pass off the Defendant's fraudulent services as those offered by CN and cause confusion, mistake, or deception as to the affiliation, connection or association of Defendant and its services with CN Services and as to whether the origin, sponsorship or approval of Defendant's services are the same as CN Services.

104. Defendant's use of the Infringing Mark confuses and/or deceives consumers, and that confusion and/or deception causes them to withhold trade from CN by purchasing Defendant's services instead of the CN Services.

105. Defendant's use of the Infringing Mark creates the false impression that Defendant's fraudulent services originate from the same source as the CN Services.

106. The false impression created by Defendant's use of the Infringing Mark has and/or will, upon information and belief, lead consumers to purchase Defendant's services on the erroneous belief that Defendant's services originate from CN.

107. Defendant had direct and full knowledge of CN's prior use and rights in the CN Mark before the acts complained of herein.

108. Defendant's unlawful and unfair conduct has led to a material diminution of the reputation and goodwill established by CN's CN Mark.

109. As a result of Defendant's aforementioned conduct, CN has suffered substantial damages, as a well as the continuing loss of the goodwill and reputation established by CN in its CN Mark.

110. This continuing loss of goodwill cannot be properly calculated and, thus, constitutes irreparable harm and an injury for which CN does not have an adequate remedy at law. Due to the unfair nature of Defendant's actions, Defendant has caused, and unless enjoined by this Court, will continue to cause, serious and irreparable injury and damage to CN.

111. Defendant's actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with CN's CN Mark, thus entitling CN to injunctive relief and to recover Defendant's profits, actual damages, enhanced profits and damages, costs, and attorneys' fees.

## COUNT V
### Cybersquatting
### (Lanham Act, 15 U.S.C. § 1125(d), *et seq.*)

112. CN re-alleges and incorporates by reference all allegations contained in this Complaint as though fully set forth herein.

113. Defendant has registered, trafficked in, and/or used domain names that are identical and confusingly similar to the CN Mark, which was distinctive at the time Defendant registered <cninvestorsllc.com> and <cninvestorllc.com> in violation of the ACPA.

114. Defendant has a bad faith intent to profit from the CN Mark because Defendant has no legal right to use the <cninvestorsllc.com> and <cninvestorllc.com> domain names, which are being used to offer fraudulent investment services for the purpose of commercial gain.

115. Under the ACPA, CN is entitled to an order requiring the domain name registrar, NameSilo, or the .com registry, VeriSign Inc., to transfer the <cninvestorsllc.com> domain name to CN's registrar of choice.

116. Under the ACPA, CN is entitled to an order requiring the domain name registrar, NameCheap, or the .com registry, VeriSign Inc., to transfer the <cninvestorllc.com> domain name to CN's registrar of choice.

117. As a direct and proximate result of such conduct, CN has suffered, and will continue to suffer, monetary loss and irreparable injury to its business, reputation, and goodwill.

118. CN has been required to retain the services of an attorney to pursue its claims and is entitled to reasonable attorneys' fees and costs incurred in the prosecution of this action.

/ / /

/ / /

**REQUEST FOR RELIEF**

WHEREFORE, as to all of its Claims, CN respectfully prays that this Court enter judgment in its favor and against Defendant, and relief as follows:

1) A preliminary and permanent injunction prohibiting Defendant and where applicable, employees, officers, directors, agents, successors, and assigns of Defendant and any other person or entity in active concern or participation with the Defendant, from:

    (a) using in commerce, including registering or trafficking in any domain names containing, the "CN INVESTORS LLC" name and CN Mark, any website or advertisement incorporating the "CN INVESTORS LLC" name and CN Mark, or any other confusingly similar trademark to the CN Mark;

    (b) engaging in any other conduct which will cause, or is likely to cause, confusion, mistake, deception, or misunderstanding as to the affiliation, connection, association, origin, sponsorship, or approval of Defendant's fraudulent business or Infringing Services with CN Services; and

    (c) otherwise infringing upon the CN Mark, falsely or deceptively advertising, or unfairly competing with CN in any manner whatsoever;

2) A mandatory injunction requiring Defendant to immediately do the following:

    (a) recall and destroy all written materials, publications, advertisements and other materials that infringe the CN Mark, or otherwise are likely to confuse or to mislead consumers in the United States;

    (b) file with the Court and serve upon CN within thirty (30) days after entry of the mandatory injunction a report in writing and signed under oath by respective corporate officers of Defendant setting forth in detail the manner and form in which each Defendant has complied with each of the terms of the Order entered by this Court in this matter, pursuant to 15 U.S.C. § 1116;

3) Judgment that Defendant has: (a) willfully used false designations of origin and/or engaged in unfair competition in violation of 15 U.S.C. § 1125(a); (b) willfully violated CN's common law rights in the CN Mark; (c) willfully made fraudulent representations regarding the origin of Defendant's fraudulent investment services; and/or (d) willfully violated CN's trademark rights under 15 U.S.C. § 1125(d) by registering and using in bad faith the Infringing

1  Domain Names;

2  4) A finding this is an exceptional case within the meaning of 15 U.S.C. § 1117(a);

3  5) An award of damages against Defendant for any and all damages pursuant to 15 U.S.C. § 1117 and the common law, specifically including but not limited to: (a) monetary damages sustained by CN; (b) any revenues and/or profits earned by Defendant as a result of the unlawful acts of Defendant as set forth herein; (c) treble damages; (d) all costs of this action and prejudgment interest; and (e) reasonable attorneys' fees;

6) An order requiring (a) VeriSign Inc. (the .com registry) and/or the NameSilo (the domain name registrar) to place the <cninvestorsllc.com> domain name on serverHold and serverTransferProhibited for the pendency of the litigation; (b) VeriSign Inc. and/or NameSilo to disable the name server information for the <cninvestorsllc.com> domain name so that it is no longer accessible to Internet users for the pendency of the litigation; (c) the current domain name registrar to change the registrar of record for the <cninvestorsllc.com> domain name from the current domain name registrar to CN's registrar of choice;

7) An order requiring (a) VeriSign Inc. (the .com registry) and/or the NameCheap (the domain name registrar) to place the <cninvestorllc.com> domain name on serverHold and serverTransferProhibited for the pendency of the litigation; (b) VeriSign Inc. and/or NameCheap to disable the name server information for the <cninvestorllc.com> domain name so that it is no longer accessible to Internet users for the pendency of the litigation; (c) the current domain name registrar to change the registrar of record for the <cninvestorllc.com> domain name from the current domain name registrar to CN's registrar of choice; and

8) Such other and further preliminary and final relief as the Court deems just and equitable under the circumstances.

/ / /
/ / /
/ / /
/ / /

# JURY DEMAND

Pursuant to Fed. R. Civ. P. 28, CN hereby demands a trial by jury on all issues for which a trial by jury may be had.

DATED: March 21, 2025.

**DICKINSON WRIGHT PLLC**

/s/ *John L. Krieger*
JOHN L. KRIEGER
Nevada Bar No. 6023
JENNIFER K. CRAFT
Nevada Bar No. 8038
BRADY A. BATHKE
Nevada Bar No. 16191
3883 Howard Hughes Pkwy., Suite 800
Las Vegas, Nevada 89169
Tel: (702) 550-4439
Fax: (844) 670-6009
Email: jkrieger@dickinsonwright.com
Email: bbathke@dickinsonwright.com

*Attorneys for Plaintiff*
*CN Investors LLC*