UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| CN INVESTORS LLC, a Nevada limited liability company,<br><br>Plaintiff(s),<br><br>v.<br><br>CN INVESTORS LLC, am unknown business entity,<br><br>Defendant(s). | Case No.2:25-CV-533  JCM (EJY)<br><br>TEMPORARY RESTRAINING ORDER |

Presently before the court is plaintiff CN Investors LLC's motion for temporary restraining order ("TRO").  (ECF No. 9).  Defendant CN Investors LLC has not responded.

**I.    Background**

This action arises from defendant's alleged fraudulent use of the "CN Investors LLC" mark (the "infringing mark").  The following allegations derive from plaintiff's complaint.  Plaintiff owns Chateau Nightclub LLC and manages multiple restaurants on the Las Vegas Strip.  (*See* ECF No. 1).  Defendant is impersonating plaintiff and is fraudulently marketing itself as a financial investment company using the name "CN Investors LLC." (*Id.*).

Defendant's website lists a Las Vegas, NV address (formerly plaintiff's address) and plaintiff's Nevada business ID and entity numbers assigned by the Nevada Secretary of State. (*Id.*).  Multiple consumers have been deceived by defendant into believing they were interacting with plaintiff.  (*Id.*).

Plaintiff's complaint charges defendant with (1) a violation of the Nevada Deceptive Trade Practices Act; (2) false designation of origin and unfair competition; (3) Nevada state and common law trademark infringement and unfair competition; (4) a second violation of the Nevada

Deceptive Trade Practices Act; and (5) cybersquatting. This court denied plaintiff's first motion for TRO without prejudice. (ECF No. 8). Plaintiff now renews its request for a TRO. (ECF No. 9).

**II.     Legal Standard**

Under Federal Rule of Civil Procedure 65, a court may issue a TRO when the moving party provides specific facts showing that immediate and irreparable injury, loss, or damage will result before the adverse party's opposition to a motion for preliminary injunction can be heard. Fed. R. Civ. P. 65. "Injunctive relief is an extraordinary remedy and it will not be granted absent a showing of probable success on the merits and the possibility of irreparable injury should it not be granted." *Shelton v. Nat'l Collegiate Athletic Assoc.*, 539 F.2d 1197, 1199 (9th Cir. 1976).

"The purpose of a [TRO] is to preserve the status quo before a preliminary injunction hearing may be held; its provisional remedial nature is designed merely to prevent irreparable loss of rights prior to judgment." *Estes v. Gaston*, No. 2:12-cv-1853-JCMVCF, 2012 WL 5839490, at *2 (D. Nev. Nov. 16, 2012); *see also Sierra On-Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1422 (9th Cir. 1984).

This court must consider the following elements in determining whether to issue a TRO and preliminary injunction: (1) a likelihood of success on the merits; (2) likelihood of irreparable injury if preliminary relief is not granted; (3) balance of hardships; and (4) advancement of the public interest. *Winter v. N.R.D.C.*, 555 U.S. 7, 20 (2008); *Stanley v. Univ. of S. California*, 13 F.3d 1313, 1319 (9th Cir. 1994); Fed. R. Civ. P. 65 (governing both TROs and preliminary injunctions).

The party seeking the injunction must satisfy each element; however, "the elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). "Serious questions going to the merits and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." Id. at 1135 (internal quotations marks omitted).

Finally, to obtain injunctive relief, plaintiff must show it is "under threat of suffering 'injury in fact' that is concrete and particularized; the threat must be actual and imminent, not conjectural or hypothetical; it must be fairly traceable to the challenged action of the defendant; and it must be likely that a favorable judicial decision will prevent or redress the injury." *Ctr. for Food Safety v. Vilsack*, 636 F.3d 1166, 1171 (9th Cir. 2011) (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488 (2009)).

**III.   Discussion**

A. Issuance of TRO ex parte

As an initial matter, plaintiff filed its motion for TRO ex parte. (*See* ECF No. 9). Under Rule 65(b), a court may issue an ex parte TRO if (1) "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition"; and (2) "the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b); *Reno Air Racing Ass'n v. McCord*, 452 F.3d 1126, 1130 (9th Cir. 2006).

The court, having considered the complaint, plaintiff's motion, supporting declarations, and accompanying exhibits, finds that the issuance of an ex parte TRO is appropriate. Defendant is unlawfully using plaintiff's mark, thereby confusing consumers into potential scams and identity theft. A TRO ensures that defendant is unable to cause further irreparable harm to plaintiff.

1. Plaintiff's trademark and competition claims

First, plaintiff is likely to succeed on the merits of its trademark infringement and competition claims. To prevail on a trademark infringement claim, plaintiff must show: (1) it has a valid, protectable mark; and (2) defendant's use of the mark is likely to cause consumer confusion. *See Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1047, 1053 (9th Cir. 1999).[1]

In the absence of federal registration, plaintiff must be the first to use its mark in commerce and such use must be lawful. *See S. Cal. Darts Ass'n v. Zaffina*, 762 F.3d 921, 926, 930-32 (9th

---

[1] The court analyzes plaintiff's federal and state law trademark infringement claims under the same standard. *See Caesars World, Inc. v. Milanian*, 247 F. Supp. 2d 1171, 1193 (D. Nev. Feb. 19, 2003).

1   Cir. 2014). It cannot be disputed that plaintiff was the first to lawfully use the CN Investors LLC
2   mark. Thus, the first element is satisfied.
3       Second, after considering the factors set forth in *AMF, Inc. v. Sleekcraft Boats*, 599 F.2d
4   341 (9th Cir. 1979), plaintiff is likely to prove that defendant's use of the mark is likely to cause
5   consumer confusion. Here, the two marks are identical; plaintiff's mark is strong; and plaintiff
6   has presented evidence of actual confusion in the marketplace. (*See* ECF No. 9).
7       2. Plaintiff's cybersquatting claim
8       Plaintiff is also likely to succeed on the merits of its anti-cybersquatting claim. Under Anti-
9   Cybersquatting Consumer Protection ("ACPA"), "cybersquatting occurs when a person other than
10  the trademark holder registers the domain name of a well-known trademark and then attempts to
11  profit from this by either ransoming the domain name back to the trademark holder or by using the
12  domain name to divert business from the trademark holder to the domain name holder." *Bosley*
13  *Medical Institute, Inc. v. Kremer*, 403 F.3d 672, 680 (9th. Cir. 2005) (quoting *Daimler Chrysler v.*
14  *The Net Inc.*, 388 F.3d 201, 204 (6th Cir. 2004)).
15      To prevail on its cybersquatting claim, plaintiff must prove "(1) registration of a domain
16  name, (2) that was 'identical or confusingly similar to' a mark that was distinctive at the time of
17  registration," and (3) "a bad faith intent to profit from that mark." *GoPets Ltd. v. Hise*, 657 F.3d
18  1024, 1030 (9th Cir. 2011) (quoting 15 U.S.C. § 1125(d)(1)).
19      Here, the first two elements are satisfied. Defendant has registered a domain name that is
20  nearly identical to plaintiff's name. (*See* ECF No. 9). Moreover, plaintiff has presented sufficient
21  evidence of bad faith. Defendant appears to be operating a fraudulent website with the intent to
22  divert consumers to scams or identity theft. (*See id*.).
23      3. Second, third, and fourth TRO elements
24      Second, allowing defendant to continue to use plaintiff's mark would result in immediate
25  and irreparable injury to plaintiff in the form of loss of income, loss of goodwill, damage to its
26  reputation, and damage to its business relationships.
27      Third, the balance of hardships in this case favors plaintiff. Denying plaintiff's request for
28  a TRO would cause significant hardship because of the irreparable harm that would result from

defendant's continued use of the infringing mark.  Moreover, granting plaintiff's request will not cause significant hardship to defendant.

Fourth, public policy weighs in favor of issuing a TRO.  Because trademark law seeks to prevent consumer confusion, a TRO would serve the public interest.  *See generally* 15 U.S.C. § 1125(a)(1).

B.  Plaintiff's bond

The issuance of a TRO is conditioned on the movant posting security "in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."  Fed. R. Civ. P. 65(c).  "The district court is afforded wide discretion in setting the amount of the bond, and the bond amount may be zero if there is no evidence the party will suffer damages from the injunction."  *Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 321 F.3d 878, 882 (9th Cir. 2003).

Further, a strong likelihood of success on the merits may favor "a minimal bond or no bond at all."  *California v. Tahoe Regional Planning Agency*, 766 F.2d 1319, 1326 (9th Cir. 1985).  Here, plaintiff will likely succeed on the merits of its claims, and a TRO would impose a limited hardship on defendant.  Thus, there is a low probability that defendant will suffer damages caused by an improperly granted TRO.  The court therefore declines to order a bond in this case.

C.  Non-parties Verisign, Inc., NameSilo, LLC, and NameCheap, Inc.

This court denied plaintiff's first motion for TRO.  (ECF No. 8).  Specifically, this court found that plaintiff failed to meet its burden of proving that non-parties Verisign, Inc., NameSilo, LLC, and NameCheap, Inc. qualify as "persons bound" under Rule 65(d).  (*Id.*).  Plaintiff has now met its burden proving that this court may order these non-parties to comply with this TRO.  (ECF No. 9 at 20).

**IV.  Conclusion**

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that plaintiff's motion for temporary restraining order (ECF No. 9) be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED that plaintiff's motion for preliminary injunction (ECF No.

1  6) is DENIED as moot.

2  IT IS FURTHER ORDERED that, pending a decision on plaintiff's motion for preliminary
3  injunction, defendant and its employees, officers, directors, agents, servants, attorneys, successors,
4  and assigns, and all other persons acting in active concert or participation with it, are hereby
5  immediately, temporarily restrained from infringing the CN mark.  Specifically, defendant is
6  hereby temporarily restrained from (1) using in commerce, including registering or trafficking in
7  any domain names containing, the infringing mark or CN mark, any website or advertisement
8  incorporating the infringing mark or CN mark, or any other confusingly similar trademark to the
9  CN mark; (2) engaging in any other conduct which will cause, or is likely to cause, confusion,
10 mistake, deception, or misunderstanding as to the affiliation, connection, association, origin,
11 sponsorship, or approval of defendant's fraudulent businesses, services, or products with the CN's
12 services provided under the CN mark; and (3) otherwise infringing upon the CN mark, falsely or
13 deceptively advertising, or unfairly competing with CN in any manner whatsoever.

14 IT IS FURTHER ORDERED that VeriSign Inc. (the .com registry) and/or NameSilo (the
15 domain name registrar) shall immediately (1) place the domain name on serverHold and
16 serverTransferProhibited; (2) disable the name server information for the domain name so that it
17 is no longer accessible to Internet users; and (3) unmask and reveal to CN's counsel all registration
18 and contact information associated with the domain name, pursuant to Uniform Domain Name
19 Dispute Resolution Policy Section 3(b) adopted by the Internet Corporation for Assigned Names
20 and Numbers ("ICANN"), to which NameSilo is bound under ICANN's Registrar Accreditation
21 Agreement Section 3.8, and which requires NameSilo to take action on infringing domain names
22 upon court order.

23 IT IS FURTHER ORDERED that VeriSign Inc. and/or NameCheap (the domain name
24 registrar) shall immediately (1) place the domain name on serverHold and
25 serverTransferProhibited; (2) disable the name server information for the domain name so that it
26 is no longer accessible to Internet users; and (3) unmask and reveal to CN's counsel all registration
27 and contact information associated with the domain name, pursuant to Uniform Domain Name
28 Dispute Resolution Policy Section 3(b) adopted by ICANN, to which NameCheap is bound under

1  ICANN's Registrar Accreditation Agreement Section 3.8, and which requires NameCheap to take
2  action on infringing domain names upon court order.

3      IT IS FURTHER ORDERED that given the registrant(s) of the infringing domain names
4  must maintain accurate contact information with the domain name registrars, plaintiff may serve
5  the summons, complaint, motion for a TRO, and this TRO on defendant to the e-mail addresses
6  included in the domain registration data for both of the infringing domain names and on the
7  "Contact Us" pages for both of the infringing domain names.

8      IT IS FURTHER ORDERED that defendant SHOW CAUSE, in writing, why plaintiff's
9  preliminary injunction (ECF No. 10) should not be granted by May 2, 2025, which shall also
10 constitute its opposition to plaintiff's motion. Any reply shall be filed on or before May 7, 2025.

11     IT IS FURTHER ORDERED that this temporary restraining order shall expire fourteen
12 (14) days after entry.

13     DATED April 25, 2025.
14     TIME: 1:30 p.m.

_____
UNITED STATES DISTRICT JUDGE