UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| CN INVESTORS LLC, a Nevada limited liability company,<br><br>Plaintiff(s),<br><br>v.<br><br>CN INVESTORS LLC, am unknown business entity,<br><br>Defendant(s). | Case No.2:25-CV-533  JCM (EJY)<br><br>ORDER |

Presently before the court is plaintiff CN Investors LLC ("plaintiff")'s motion for default judgment.  (ECF No. 17).  Defendant, an unknown business entity also named CN Investors LLC ("defendant") did not respond.

**I.     Background**

Plaintiff is a Nevada limited liability company with its principal place of business in Las Vegas, Nevada.  (ECF No. 1 at 2).  Defendant is an unknown business entity that claims to have offices in Las Vegas, Nevada and in Manama, Bahrain.  (*Id.*).

Plaintiff owns Chateau Nightclub LLC and manages two restaurants on the Las Vegas Strip.  (*Id.* at 3).  The restaurants are located at the Paris Las Vegas Hotel & Casino and are known for their views of the Las Vegas Strip and elevated food and drink selections.  (*Id.* at 4).  Plaintiff is the record owner of a Nevada trademark registration for CN INVESTORS LLC which was issued on February 27, 2025.  (*Id.*).  Plaintiff has continually used the mark in connection with business management, business information, and restaurant management since at least February 22, 2010, and has spent substantial amounts of money to advertise and promote its mark.  (*Id.*).

Defendant is impersonating plaintiff by fraudulently marketing itself as a financial investment company using the name "CN Investors LLC" as a corporate name, trademark, and by the way of infringing domain names. (*Id.* at 5). Defendant has registered two domain names in support of its impersonation of plaintiff: <cninvestorsllc.com>, which was registered on May 8, 2024, through domain registrar NameSilo, LLC and <cninvestorllc.com>, which was registered on October 29, 2021 through domain name registrar NameCheap, Inc. (*Id.*).

On defendant's "About Us" page, it purports to be an investment and financial services company that operates throughout Europe, America, North Africa, and other emerging markets, and claims it has invested over 48 billion USD. (*Id.* at 6). On the same page, defendant lists a Las Vegas, Nevada address that is plaintiff's previous address and lists plaintiffs Nevada Business ID and Entity Number assigned by the Nevada Secretary of State. (*Id.*).

Plaintiff asserts that defendant includes this information on its websites to trade off plaintiff's goodwill and intentionally cause consumers to believe both sites are operated and approved by plaintiff. (*Id.* at 7). In fact, plaintiff has identified multiple consumers who were deceived by defendant. (*Id.* at 7–8).

Plaintiff sued on March 3, 2025. (ECF No. 1). Defendant did not, and still has not, appeared to defend itself. On April 25, 2025, the court instituted a temporary restraining order. (ECF No. 11). Plaintiff then moved for entry of clerk's default which was granted on June 23, 2025. (ECF No. 16). Plaintiff now moves for default judgment.

**II.    Legal Standard**

Federal Rule of Civil Procedure 55 sets forth a two-step process for obtaining a default judgment. *See Eitel v. McCool*, 782 F.2d 1470, 1471 (9th Cir. 1986). "First, a party must obtain a clerk's entry of default under Rule 55(a)," and second, "the party may seek entry of default judgment under Rule 55(b)." *Doe v. Jeffries*, No. 18CV2021-MMA (JMA), 2018 WL 6582832, at *1 (S.D. Cal. Oct. 17, 2018) (citing *Symantec Corp. v. Glob. Impact, Inc.*, 559 F.3d 922, 923 (9th Cir. 2009)). The court considers seven factors in determining whether to grant default judgment:

. . .

(1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel*, 782 F.2d at 1471–72.

### III.    Discussion

#### A.  Procedural requirements

The required procedures described in Federal Rule of Civil Procedure 55 have been satisfied.  The clerk entered default on June 23, 2025.  (ECF No. 16).

#### B.  Factors for default judgment against defendants

The *Eitel* factors, discussed below, weigh in favor of granting default judgment.

##### 1.  Possibility of prejudice

The first *Eitel* factor requires the court to consider the possibility that plaintiff will suffer prejudice if default judgment is denied.  *Eitel*, 782 F.2d at 1471.  Here, defendant has not filed a responsive pleading, despite being adequately served.  (ECF No. 12).  Plaintiff will have no other recourse for recovery if default is denied.  Thus, this factor weighs in favor of default judgment.

##### 2.  Merits of claim and sufficiency of complaint

The second and third *Eitel* factors analyze the substantive merits of plaintiff's claim and the sufficiency of the complaint.  *See Eitel*, 782 F.2d at 1471.  To warrant default judgment, the allegations in the complaint must be sufficient to state a claim upon which relief can be granted. *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978).  "The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true."  *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987) (citation omitted).

Plaintiff alleges defendant is liable for 1) two violations Nevada's Deceptive Trade Practices Act, 2) false designation of origin and unfair competition, 3) Nevada state and common law trademark infringement and unfair competition, 4) and cybersquatting.   (ECF No. 1 at 10–16).  Upon review of the record, the court is satisfied with allegations pleaded in the complaint and

finds that these factors supports default judgment.

### 3. *Money at stake*

The third *Eitel* factor requires the court to consider the amount of money at stake in relation to the seriousness of defendants' conduct. *See Eitel*, 782 F.2d at 1471. "[D]efault judgment is disfavored when a large amount of money is involved or is unreasonable in light of the [d]efendant's actions." *Warrington v. Taylor*, 2022 WL 2062921, at *3 (C.D. Cal. Mar. 9, 2022) (quoting *Valentin v. Grant Mercantile Agency, Inc.*, 2017 WL 6604410, at *7 (E.D. Cal. Dec. 27, 2017)).

The money at stake in this case is modest. Plaintiff requests monetary relief in the form of statutory damages and attorneys' fees. The court finds that in light of this limited request for monetary relief, this factor weighs in favor of default judgment. However, the court will discuss damages in more detail below.

### 4. *Whether default was due to excusable neglect*

The fourth *Eitel* factor requires the court to consider whether the default was due to excusable neglect. *Eitel*, 782 F.2d at 1472. Here, despite being properly served with the summons and complaint (ECF No. 12), defendant has failed to appear and defend itself. This factor weighs in favor of default judgment.

### 5. *Possibility of dispute concerning material facts*

The fifth *Eitel* factor requires the court to consider whether there is a dispute over material facts. *See Eitel*, 782 F.2d at 1471–72. "The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *TeleVideo Sys., Inc.*, 826 F.2d at 917–18 (quoting *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977)). Since defendant has not filed any motions or responsive pleadings in this case and has not contradicted any of the allegations, there cannot be a possibility of dispute. This factor weighs in favor of default judgment.

### 6. *Public policy favoring a decision on the merits*

The final *Eitel* factor is whether there is a strong policy favoring a decision on the merits. *Eitel*, 782 F.2d at 1472. Although this factor inherently favors decisions on the merits, "this

- 4 -

preference, standing alone, is not dispositive." *PepsiCo, Inc.*, 238 F. Supp. 2d at 1177.  In fact, when a defendant fails to respond to the plaintiff's complaint, ignores requests to participate in litigation, and fails to demonstrate an intent to defend the action, this factor shifts in favor of default judgment.  *See Sideshow, Inc. v. Damon*, 2020 WL 8093348, at *4 (C.D. Cal. Nov. 16, 2020).

Here, defendant has failed to appear or otherwise respond to plaintiff's complaint. Defendant has not demonstrated an intent to defend itself in this action. This factor weighs in favor of default judgment.

**IV.    Remedies**

A.  Damages

Although the court enjoys discretion when determining the amount of damages, *see* Fed. R. Civ. P. 55(b)(2), "[t]he general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987).  "It is well settled that a default judgment for money may not be entered without a hearing unless the amount claimed is a liquidated sum or capable of mathematical calculation." *Davis v. Fendler*, 650 F.2d 1154, 1161 (9th Cir. 1981).

A party that prevails on a claim of cybersquatting may elect to recover "instead of actual damages and profits, an award of statutory damages in the amount of not less than $1,000 and not more than $100,000 per domain name, as the court considers just." 15 U.S.C. § 1117(d). Plaintiff seeks the maximum statutory damages for each of the defendant's cybersquatting domains, for a total of $200,000.

When determining appropriate statutory damages for cybersquatting, courts weigh several factors: the egregiousness or willfulness of the defendant's conduct, the use of false contact information to conceal infringing activity, whether the defendant is a "serial" cybersquatter— meaning one who systematically registers and uses domain names that infringe on the rights of others—and any behavior reflecting contempt for the court or its proceedings. *Verizon California Inc. v. Onlinenic, Inc.*, No. C 08-2832 JF (RS), 2009 WL 2706393, at *3 (N.D. Cal. Aug. 25, 2009).

. . .

While courts have awarded a range of damages in similar cases, they rarely impose the maximum statutory amount. *See Digby Adler Grp. LLC v. Image Rent a Car, Inc.*, 79 F. Supp. 3d 1095, 1108 n.4 (N.D. Cal. 2015) (collecting cases). Here, defendant's cybersquatting was both willful and highly egregious. Defendant registered domains using plaintiff's registered trademark and listed plaintiff's former address and Business ID/Entity Number as its own, apparently to deceive consumers. (ECF No. 1 at 6). Moreover, at least two potential consumers were misled by defendant's infringing activity—one of whom nearly invested $5,000,000 in defendant's fraudulent enterprise before the scheme was uncovered. (*Id.* at 7–8). These facts weigh strongly in favor of a substantial statutory damages award.

Nevertheless, the remaining factors do not support the maximum award. The defendant did not employ multiple false identities to conceal its domain registrations, did not engage in "kitting" which is the practice of repeatedly registering and canceling domain names to avoid fees and evade detection by trademark owners, and engaged in no comparable conduct. *Cf. Verizon Cal. Inc.*, 2009 WL 2706393 at 4–5. There is likewise no evidence of a broader pattern of infringing conduct or of any behavior reflecting contempt for the court or its proceedings.

Accordingly, the court concludes that the maximum statutory damages are not warranted. Instead, the court finds that plaintiff is entitled to $25,000 per violation, for a total award of $50,000.

B. Attorneys' fees

The Lanham Act provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a). A case is exceptional if the defendant disseminated the false advertisements in a "fraudulent, deliberate, or willful" manner. *Horphag Research Ltd. v. Garcia,* 475 F.3d 1029, 1039 (9th Cir.2007). In other words, if defendant acted with the deliberate intent to confuse consumers, attorneys' fees are warranted. *See id.*

Because the court has determined defendant acted with deliberate intent to confuse consumers, attorneys' fees are warranted. Upon review of plaintiff's determination of fees, the court finds that $24,060.40 to be reasonable. The court also awards costs in the amount of $405.00. . . .

**V.    Conclusion**

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that plaintiff's motion for default judgment (ECF No. 17) be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED that:

1) Defendant must immediately and permanently cease any and all use of the CN Mark in connection with the offering, sale, promotion, marketing, or publicity of the CN Services in the United States, its territories, and possessions (collectively, "United States"), including, but not limited to, use: (i) in the trade names and entity names of any legal entities owned or controlled in whole or in part by defendant; ii) in text, image, sound, or video on any social media or online post published by defendant; and (iii) in the name of any social media account or in the URL, post domain path, or domain name of any website or webpage accessible by residents of the United States;

2) Pursuant to 15 U.S.C. § 117(d), defendant shall pay plaintiff $50,000 for registering and using <cninvestorsllc.com> and <cninvestorllc.com> domain names with a bad faith intendent to profit from the CN Mark in violation of 15 U.S.C.;

3) VeriSign Inc. (the .com registry) and/or the NameSilo (the domain name registrar) shall transfer ownership of the domain name registration to plaintiff and release the serverHold and serverTransferProhibited previously imposed by this court, including requiring the registrar to change the registrar of record for the domain name from the current domain name registrar to plaintiff's registrar of choice;

4) VeriSign Inc. (the .com registry) and/or the NameCheap (the domain name registrar) shall transfer ownership of the domain name registration to plaintiff and release the serverHold and serverTransferProhibited previously imposed by this court, including requiring the registrar to change the registrar of record for the domain name from the current domain name registrar to plaintiff's registrar of choice;

5) Plaintiff shall recover its reasonable attorneys' fees in the amount of $24,060.40 and costs in the amount of $405; and

6) Post judgment interest shall be allowed as authorized by law until judgement is satisfied.

DATED May 5, 2026.

_____
UNITED STATES DISTRICT JUDGE